UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KACIE EMERSON, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) ) Case No. 4:20-cv-00004-MTS |
| CAPITAL ONE, NA, et al., | ) ) ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants Sarah Aasted and Robert Riley, II's Motion to Dismiss Pursuant to Rule 12(b)(6), Doc. [27]. The Motion is fully briefed. For the following reasons, the Motion is granted in part and denied in part.

**I.   BACKGROUND**

The Court, as it must in ruling on a motion to dismiss for failure to state a claim, will accept as true the facts Plaintiff pleaded in her Amended Complaint, Doc. [22]. *See Shaar v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008). Defendant Capital One, NA, hired Plaintiff Kacie Emerson in February 2018 as a Commercial Card Sales Officer. Doc. [22] ¶ 47. Before and during her employment with Capital One, Emerson struggled with post-traumatic stress disorder, anxiety, depression, and alcohol dependency. *Id.* ¶ 48. Around February 12, 2019, Emerson requested an accommodation from Capital One for treatment of her various health issues, which were worsening at that time. *Id.* ¶ 49. Emerson claims that, ostensibly in response to her accommodation request, Capital One initially gave her a leave of absence on March 4, 2019; however, her managers removed her from leave status and "demand[ed] that [she] participate in meetings and sales calls." *Id.* ¶¶ 53–54. On March 7, 2019, Emerson had a relapse of her alcohol

dependency. *Id.* ¶ 54. While she concedes that she had participated in meetings and sales calls that day, she claims she was not working at the time of the relapse. *Id.* ¶ 55.

Emerson's fiancé, seeking help, contacted Defendant Sarah Aasted, Emerson's coworker and Alcoholics Anonymous (AA) sponsor, who came to assist Emerson. *Id.* ¶¶ 4, 56–57. After that event, Emerson alleges that Aasted "betrayed Emerson's confidence" and reported the incident to both Emerson's manager at Capital One and Aasted's husband, Defendant Robert Riley. *Id.* ¶¶ 15, 23, 58. Riley, Emerson claims, is a credentialed Missouri Associate Alcohol Drug Counselor who owns numerous rehabilitation centers in the St. Louis area. *Id.* ¶¶ 16, 22. After Aasted disclosed Emerson's relapse to Riley, Emerson claims that Riley called her and "threatened to 'report' her into Missouri Child Protective Services unless she went to a specific rehabilitation center in Chicago." *Id.* ¶ 59. Emerson alleges the Chicago rehab center was "operated by Riley's friend." *Id.* ¶ 60.

After this episode, on March 20, 2019, Emerson contacted Capital One's human resources and employee support hotline to, in part, complain about Aasted's behavior and that she was being harassed by Riley. *Id.* ¶¶ 25, 65. The human resources department called Emerson the next day, not to follow up on Emerson's complaints, but instead to inform her that Capital One was opening an investigation into her March 7, 2019 relapse. *Id.* ¶¶ 26, 66–67. During the investigation, according to Emerson, Aasted "falsely accused Emerson of working while drinking," though Emerson denies that she was drinking while working on March 7, 2019. *Id.* ¶¶ 68–69. Capital One, on April 2, 2019, fired Emerson "for allegedly violating [its] alcohol policy." *Id.* ¶ 70; *see also id.* ¶ 28. Emerson finally alleges that Aasted was assigned Emerson's accounts after Emerson was fired and that Aasted also "benefitted financially from betraying Emerson's confidence."[1] *Id.*

---

[1] The Court notes that Emerson alleged her fiancé is the one who originally contacted Aasted on the day of the relapse. Doc. [22] ¶ 56.

¶¶ 31, 73.

Emerson brought several claims based on those alleged facts against Capital One, Aasted, and Riley. *See* Doc. [22]. At issue here are only Emerson's claims against Aasted and Riley: first, tortious interference with a business relationship or expectancy against Aasted (Count XII), and second, claims against both Aasted and Riley for negligent infliction of emotional distress (NIED) (Counts XIII and XIV, respectively). *Id.* at 21–25. Aasted and Riley challenged each of those three claims pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Emerson has not stated a claim upon which relief can be granted.

## II.    LEGAL STANDARD

In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, the Court must accept as true all the allegations pleaded in the complaint. *Schaar*, 517 F.3d at 549 (8th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). The Court "must liberally construe a complaint in favor of the plaintiff," *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010), and must grant all reasonable inferences in her favor, *Lustgraaf v. Behrens*, 619 F.3d 867, 872–73 (8th Cir. 2010). But the Court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a plaintiff cannot rest on mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555). It is not enough under Fed. R. Civ. P. 8 to plead "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Iqbal*, 556 U.S. at 678. "Where the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate."

*Id.* (citing *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997)). If a plaintiff fails to allege one of the elements necessary to recovery on a legal theory, that claim must be dismissed. *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011).

A claim for tortious interference with a contract or business expectancy, one of the claims at issue here, requires the plaintiff to demonstrate "(1) a contract or a valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) intentional interference by the defendant inducing or causing a breach of the contract or relationship; (4) absence of justification; and (5) damages resulting from defendant's conduct." *W. Blue Print Co. v. Roberts*, 367 S.W.3d 7, 19 (Mo. banc 2012); *accord Bishop & Assocs., LLC v. Ameren Corp.*, 520 S.W.3d 463, 472 (Mo. banc 2017). To plead negligent infliction of emotional distress—the other two claims challenged by Aasted and Riley—a plaintiff must, in addition to satisfying the general negligence elements of duty, breach, actual and proximate cause, and injury, show (1) that the defendant realized or should have realized his or her conduct involved an unreasonable risk of causing distress, and (2) plaintiff suffered emotional distress or mental injury that is medically diagnosable and sufficiently severe to be medically significant. *Gillis v. Principia Corp.*, 832 F.3d 865, 875 (8th Cir. 2016) (quoting *Gordon v. City of Kansas City, Mo.*, 241 F.3d 997, 1004 (8th Cir. 2001)); *Thornburg v. Fed. Express Corp.*, 62 S.W.3d 421, 327 (Mo. Ct. App. 2001).

### III.  DISCUSSION

As a threshold matter, Emerson claims that Defendants' Motion to Dismiss improperly offers evidence or facts "that go beyond the scope of the pleadings." Doc. [31] at 5–7. Emerson argues that the Court should ignore these additional "facts" in considering the Motion to Dismiss or, alternatively, convert the Motion to a motion for summary judgement. *Id.* Rule 12(d) of the Federal Rules of Civil Procedure provides that "[i]f, on a motion under Rule 12(b)(6) . . ., matters

outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." *See Gorog v. Best Buy Co.*, 760 F.3d 787, 791 (8th Cir. 2014). But "[a] district court does not convert a motion to dismiss into a motion for summary judgment when, for example, it does not rely on matters outside the pleadings." *Id.* Courts typically consider "matters outside the pleadings" to include "any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings." *Id.* (quoting *BJC Health Sys. v. Columbia Cas. Co.*, 348 F.3d 685, 687 (8th Cir. 2003)).

Emerson singles out four statements Defendants made in their Memorandum supporting the Motion to Dismiss, Doc. [28], as "additional factual statements and [e]ditorialized allegations" that warrant conversion to summary judgment under Rule 12(d):

- Plaintiff was discharged after her co-worker (Aasted) found Plaintiff working while intoxicated and reported the situation to their supervisor out of concern for Plaintiff's safety.

- Plaintiff joined the Alcoholics Anonymous program, and Aasted agreed to temporarily work with her as her sponsor.

- Following the encounter at Plaintiff's home on March 7, 2019 wherein Aasted observed Plaintiff working in an intoxicated state, Aasted called their mutual manager to discuss the situation.

- Following an investigation, Plaintiff's employment was terminated by Capital One for violation of its policy that prohibits employees from working while under the influence of alcohol.

Doc. [31] at 5. The Court finds that these statements do not constitute "matters outside the pleadings" and instead are generally consistent with, if worded slightly differently than, the allegations in Emerson's Amended Complaint. Defendants did not seek to provide "evidence" outside the pleadings; instead, they "merely reiterated" what Emerson alleged, though admittedly from Defendants' point of view. To the extent these statements constitute a factual dispute with

Emerson's allegations, that issue is dealt with by the requirement that the Court "liberally construe [the] complaint in favor of the plaintiff." *Huggins*, 592 F.3d at 862. The Court therefore need not strike the statements from Defendants' Memorandum, nor must it convert the Motion to Dismiss to one for summary judgment.

Turning now to the substance of the Motion to Dismiss, the Court will begin its analysis with Emerson's claim against Aasted for tortious interference with contract or business expectancy before assessing her NIED claims against both Aasted and Riley.

### A. Tortious Interference with Contract or Business Expectancy Against Aasted

Emerson pleaded sufficient facts to state a claim of tortious interference against Defendant Aasted. First, Emerson alleged that she had a valid business expectancy based on her employment relationship with Capital One. While Emerson does not claim she has any contract with Capital One, a "business expectancy need not be based on an existing contract." *W. Blue Print*, 367 S.W.3d at 19; *Rail Switching Servs., Inc. v. Marquis-Mo. Terminal, LLC*, 533 S.W.3d 245, 260 (Mo. Ct. App. 2017). Instead, "[a] probable future business relationship that gives rise to a reasonable expectancy of financial benefit is enough." *Id.* (quoting *Stehno v. Sprint Spectrum, L.P.*, 186 S.W.3d 247, 251 (Mo. banc 2006)); *see also Rail Switching Servs., Inc.*, 533 S.W.3d at 260 (explaining that a tortious interference with business expectancy claim requires a determination of whether "the expectancy claimed was reasonable and valid under the circumstances alleged" (quoting *BMK Corp. v. Clayton Corp.*, 226 S.W.3d 179, 190 (Mo. Ct. App. 2007))). Emerson claimed that she was scheduled to receive an award at Capital One's Annual Sales Conference, for which she had already purchased a plane ticket, "for being a top achiever at Capital." Doc. 22 ¶¶ 169–71. Given her claimed status as a "top achiever" at Capital One, at the motion-to-dismiss stage, the Court is satisfied that Emerson has adequately pleaded she had a

reasonable expectancy of her continued employment with Capital One.[2]

Emerson clearly pleaded the second element: that the defendant knew of the valid business relationship. The Court can infer that Aasted was aware of Emerson's employment relationship with Capital One by virtue of Emerson's claims that Aasted was her coworker and AA sponsor. *See Lustgraaf v. Behrens*, 619 F.3d 867, 872–73 (8th Cir. 2010) (noting that courts "grant all reasonable inferences in favor of the nonmoving party" for purposes of a motion to dismiss). Emerson also alleged that Aasted "was aware that Plaintiff expected to continue her relationship and employment" with Capital One. Doc. [22] ¶ 173.

The third element requires, first, intentional interference by the defendant, and second, that the intentional interference caused a breach of the relationship. *See Cmty. Title Co. v. Roosevelt Fed. Sav. & Loan Ass'n*, 670 S.W.2d 895, 905 (Mo. Ct. App. 1984) (noting tortious interference requires defendant to have "actively and affirmatively [taken] steps to induce a breach"); *Fabricor, Inc. v. E.I. DuPont de Nemours & Co.*, 24 S.W.3d 82, 93 (Mo. Ct. App. 2000) ("To establish the third element of a tortious interference claim, the plaintiff must show that the defendant's acts induced or caused a breach of the relationship."). Emerson plainly pleaded sufficient facts to meet this element. She alleged that Aasted intentionally and falsely reported to Capital One that Emerson was drinking on the job, that Capital One subsequently fired Emerson because of the alleged violation of its alcohol policy, and that Aasted was assigned all of Emerson's accounts as a result, providing a plausible motive for intentionally interfering with Emerson's employment

---

[2] While Aasted argues that Emerson's status as an at-will employee bars her tortious interference claim, no such categorical bar exists: "Although an at-will employee cannot assert a claim for breach of contract, he or she can assert a claim against a third party for tortious interference with his at-will employment." *McGee v. Nat'l Healthcare Corp.*, No. 4:08-cv-1092-DJS, 2009 WL 467309 (E.D. Mo. Feb. 24, 2009) (citing *Singleton v. Cecil*, 176 F.3d 419, 422 (8th Cir. 1999)); *see also Hensen v. Truman Med. Ctr., Inc.*, 62 S.W.3d 549, 553 (Mo. Ct. App. 2001) ("That a contract of employment is 'at-will' will not defeat an action for tortious interference."); *Topper v. Midwest Div., Inc.*, 306 S.W.3d 117, 125 (Mo. Ct. App. 2010).

with Capital One.

Finally, the allegations in the Amended Complaint meet the pleading requirements for the both the fourth and fifth elements. "Absence of justification refers to the absence of a legal right to justify actions taken." *Vilcek v. Uber USA, LLC*, 902 F.3d 815, 819 (8th Cir. 2018) (quoting *W. Blue Print*, 367 S.W.3d at 20). A defendant cannot be held liable for tortious interference "if it ha[d] an unqualified right to perform the act." *Bishop & Assocs.*, 520 S.W.3d at 472 (quoting *Rice v. Hodapp*, 919 S.W.2d 240, 245 (Mo. banc 1996)). Such an unqualified right exists where the defendant "has a legitimate economic interest in the [business] expectancy and does not use improper means." *Vilcek*, 902 F.3d at 822. The Court need not address whether Aasted had any legitimate economic interest in Emerson's expectancy because Emerson clearly pleaded that Aasted used improper means by falsely reporting that Emerson was drinking on the job, leading to Capital One's decision to fire her. *See Bishop & Assocs.*, 520 S.W.3d at 472 (including "misrepresentation of fact" as a type of improper means); *McGee v. Nat'l Healthcare Corp.*, No. 4:08-cv-1092-DJS, 2009 WL 467309, at *3 (E.D. Mo. Feb. 24, 2009) (finding plaintiff properly alleged absence of justification where she claimed she was fired "for a wrongful purpose"). Emerson thus properly alleged absence of justification.[3] She likewise pleaded the fifth element—

---

[3] Aasted seeks to circumvent this conclusion by arguing that she was not a third party to Emerson's business relationship and thus cannot be liable for tortious interference. *See* Doc. [35] at 4–7. For support, she cites *Farrow v. Saint Francis Medical Center*, 407 S.W.3d 579 (Mo. banc 2013), but that case is easily distinguished. In *Farrow*, the Supreme Court of Missouri held that the defendant doctor, who was the plaintiff's supervisor, could not have tortiously interfered with the plaintiff's business expectancy because "had had a legal right to criticize her work performance" and, as the plaintiff's supervisor, "he was [the defendant hospital's] agent, not a third party." 407 S.W.3d at 602–03. But Emerson made no allegations suggesting Aasted is either her supervisor or an "officer or agent" of Capital One, *see Farrow*, 407 S.W.3d at 602, such that Aasted was acting as a party to Emerson and Capital One's business relationship. Instead, Emerson expressly asserted that Aasted was her coworker, and Aasted, in her Memorandum supporting the instant Motion, stated that she called her and Emerson's "mutual manager" to discuss Emerson's alleged relapse. *See* Docs. [22] ¶ 4, [28] at 3. The Court has no basis for barring the tortious interference claim at this point on the grounds that Aasted was not a third party to the business relationship, particularly where Aasted allegedly engaged in improper behavior. *See Envirotech, Inc. v. Thomas*, 259 SW.3d 577, 590 (Mo. Ct. App. 2008) (finding no presumption of justification where none of the defendants were parties to the contract that was allegedly breached); *Bishop & Assocs.*, 520 S.W.3d at 472; *cf. Reed v. Curators of Univ. of Mo.*, 509 S.W.3d 816, 829 (Mo. Ct. App. 2016).

damages caused by Aasted's alleged conduct.  Emerson claimed that Capital One fired her because of Aasted's accusations, causing her emotional distress as well as loss of past and future wages.  Those allegations are adequate at this stage in the litigation.

Because Emerson adequately pleaded tortious interference against Aasted, the Court will deny the Motion to Dismiss with respect to that claim.

## B.  Negligent Infliction of Emotional Distress Against Both Aasted and Riley

An NIED claim is, at its root, a negligence claim.  A plaintiff claiming NIED cannot, therefore, lose sight of the most basic requirements of an allegation of negligence: that the defendant owed the plaintiff a duty of care and breached that duty.  *See Nickel v. Stephens Coll.*, 480 S.W.3d 390, 400 (Mo. Ct. App. 2015); *Thornburg*, 62 S.W.3d at 427.  Whether a duty exists "is a question of law for the court to determine."  *Id.* (quoting *Lopez v. Three Rivers Elec. Coop.*, 26 S.W.2d 151, 155 (Mo. banc 2000)).

### 1.  NIED Against Aasted

It appears likely that Aasted owed Emerson at least some duty arising out of her relationship with Emerson as her AA sponsor and confidant.  *See Scott v. Dyno Nobel, Inc.*, 967 F.3d 741, 744–45 (8th Cir. 2020) ("[W]hether a defendant owed a duty to a particular plaintiff depends in part on whether the risk in question was foreseeable."); *Brown v. Davis*, 813 F.3d 1130, 1136 (8th Cir. 2016) ("The duty to exercise care may be a duty imposed by common law under the circumstances of a given case." (quoting *Hoover's Dairy, Inc. v. Mid-Am. Dairymen, Inc./Special Prods. Inc.*, 700 S.W.2s 426, 431 (Mo. banc 1985))).  Rather than focusing on that duty, however, Emerson grounds her NIED claim against Aasted on an alleged "duty of ordinary care to keep information confidential."  Doc. [22] ¶¶ 182–83.  Such a duty may exist, depending on the facts, in the context of an AA sponsor-sponsee relationship.  *See S.E.C. v. McGee*, 895 F.

Supp. 2d 669, 681–82 (E.D. Penn. 2012) (finding duty of confidentiality existed between two AA members in securities fraud case).

But the Amended Complaint lacks sufficient information detailing the specifics of any such duty, if indeed it existed. Emerson vaguely alleged that "Aasted breached her duty to [P]laintiff when she disclosed confidential information to Plaintiff's supervisor." Doc. [22] ¶ 183. Emerson did not shed any light on the contents of this purportedly confidential information in Count XIII. Based on the remainder of the Amended Complaint, the only information Aasted allegedly "disclosed" to Emerson's supervisor was the occurrence of the February 12, 2019 relapse. *Id.* ¶ 58. Notably, Emerson explicitly claimed that her *fiancé* reached out to Aasted to ask for help when Emerson relapsed. *Id.* ¶ 56. Based on her own allegations, then, it is not clear what about that information was "confidential." In the absence of pleadings regarding the obligations an AA sponsor might have pertaining to information given to her by a third party (as opposed to by her sponsee), Emerson has not provided a factual basis for a breach of Aasted's alleged duty of confidentiality. The lack of any details providing context for what Emerson's fiancé told Aasted compounds that issue.

It is not clear, based on the allegations in the Amended Complaint, what the scope of Aasted's duty of confidentiality might be, nor is it clear that Aasted's disclosure exceeded that scope (or even involved confidential information in the first place). Thus, Emerson did not plead her NIED claim against Aasted with sufficient particularity to suggest a plausible duty and breach by Aasted, rendering the claim deficient under Rule 8(a). *See Benton*, 524 F.3d at 870 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions . . . . The complaint must allege facts, which, when taken as true, raise more than a speculative right to relief." (quoting *Twombly*, 550 U.S. at 555)). For those reasons, the Court

will grant the Motion to Dismiss the NIED claim against Aasted, though it will give Emerson leave to file a second amended complaint if she wishes to amend her claim.

*2. NIED Against Riley*

The NIED claim against Riley is even more lacking than the one against Aasted. In assessing whether a duty exists, courts have focused on the relationship between the plaintiff and defendant: "The common denominator which must be present [in a negligence action] is the existence of a relationship between the plaintiff and defendant that the law recognizes as the basis of a duty of care." *Long v. Cottrell, Inc.*, 265 F.3d 663, 670 (8th Cir. 2001) (quoting *Parra v. Bldg. Erection Servs.*, 982 S.W.2d 278, 283 (Mo. Ct. App. 1998)); *Ford v. GACS, Inc.*, 265 F.3d 670, 682 (8th Cir. 2001).

Emerson failed to allege any relationship between herself and Riley whatsoever. She does not claim Riley had a relationship with her in his professional capacity as an addiction counselor—a point Emerson concedes in her reply brief. *See* Doc. [31] at 11. Instead, Emerson made the sweeping allegation in her Amended Complaint that Riley had a duty of care because "he held himself out as an addiction counselor." *Id.* ¶ 190. Such an allegation is insufficient to support a claim of NIED because it fails to draw any connection between Emerson and Riley that could give rise to a duty of care. *See Thornburg*, 62 S.W.3d at 427 (affirming dismissal of NIED claim where plaintiff failed to allege defendants owed any legally recognized duty); *Nickel*, 480 S.W.3d at 400 (rejecting NIED claim where plaintiff offered an "amorphous general legal duty" without support). The Amended Complaint lacks any facts or context regarding Emerson and Riley's relationship; without that information, the Court is left searching for any grounds creating a duty running from Riley to Emerson. The Court will therefore grant the Motion to Dismiss Emerson's NIED claim

against Riley. As already stated, the Court will give Emerson the opportunity to file a second amended complaint should she wish to fix the defects with her claims.

## CONCLUSION

Emerson pleaded sufficient facts pertaining to her tortious interference claim against Aasted to satisfy the requirements of Fed. R. Civ. P. 8(a), so the Court will not dismiss that claim. However, she failed to plead the requisite elements of negligence in her NIED claims against Aasted and Riley and thus failed to state a claim for NIED against either Defendant.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6), Doc. [27], is **GRANTED in part** and **DENIED in part**. Defendants' Motion to Dismiss the tortious interference claim in Count XII of the Amended Complaint, Doc. [22], is **DENIED.** Because Emerson failed to properly allege an NIED claim against either Aasted or Riley in Counts XIII or XIV, however, Defendants' Motion to Dismiss those claims is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff shall have fourteen days from the date of this Memorandum and Order to file a second amended complaint, wherein she may seek to amend the defects with her current claims or add additional claims if she so desires.

Dated this 22nd day of March, 2021.

MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE